UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. 05-10155-MLW |
| ) | |
| JANET SMITH ) | |
| THOMAS CABANA | |

MOTION FOR RECONSIDERATION REGARDING IMPOSITION OF SENTENCE

On August 9, 2006, the Court sentenced Thomas Cabana and Janet Smith to serve simultaneous terms of incarceration followed by respective periods of supervised release. During that hearing, defense counsel requested that the Court consider staggering the committed portions of these sentences so that one of the defendant's would be available to maintain their home while the other was serving his or her prison term. The Court denied this request stating that although the loss of the family home was of concern, this consequence was perhaps unavoidable at this point.

The defendants respectfully request that the Court reconsider its ruling denying their request to stagger the committed portions of their respective sentences. As reasons therefore, they state that serving simultaneous jail terms would not only cause them to potentially lose their home but that it would also assure the loss of their business and largest source of recent income, Foxboro Consulting Associates.

From the time that the defendants filed Chapter 11 Bankruptcy on December 7, 2000 through the day that they began their restitution payment plan with the Norfolk Superior Court in July 2003, they have paid back over $37, 000.00 to injured parties and in satisfaction of personal

loans all related to the Trip Makers, Inc. business ("Trip Makers"). This would not have been possible without the income derived from Foxboro Consulting Associates. In addition, from July 2003 until the present date, the defendants have paid back an additional $42,000.00 due in large part to Foxboro Consulting Associates income.

If the defendants serve simultaneous jail terms, they will be forced to put an end to the Foxboro Consulting business. Once their prison terms are completed, Ms. Smith's felony conviction in this case will likely make a return to her Home Depot job impossible; this source of income will be lost. There is also no guarantee that she will be able to keep her current job with Dealership Software in Rhode Island for the same reasons.

By way of illustration, if after serving their respective jail terms the defendants are able to secure jobs that pay them a wage of $12.00 per hour and they work forty hours per week, they would take home a gross combined wage of about $48, 000.00 for the year. This result would make paying state and federal restitution obligations extremely difficult if not impossible. There is certainly no guarantee that Foxboro Consulting can be resurrected after losing its client base and being inactive for such a lengthy period of time. The defendants want to serve their sentences and then be in a position where they can successfully comply with their restitution obligations without sacrificing their ability to provide for their own basic living needs. In support of this request, Mr. Cabana and Ms. Smith have submitted statements to the court in the form of the attached Exhibits, A and B.

JANET SMITH
By her attorney,

/s/ Glen P. Randall

Glen P. Randall
50 Burlington Mall Road
Suite 100
Burlington, MA 01803
(781) 238-0300

THOMAS CABANA
By his attorney,

/s/ Oscar Cruz, Jr.

Oscar Cruz, Jr.
  B.B.O. #630813
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

CERTIFICATE OF SERVICE

_____I, Oscar Cruz, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2006.

/s/Oscar Cruz, Jr.
Oscar Cruz, Jr.

**To the Honorable Chief Judge Mark L.Wolf:**

I want to express to the Court my deep remorse for the criminal actions that I have committed. I was never trying to financially gain from these actions. I was trying to keep a floundering business afloat; however, I understand that the decisions I made were criminal in nature and that I must and want to accept the consequences of these actions.

I simply ask the Court to take into consideration my motives; my cooperation with the government during their investigation and the financial devastation I face if I lose my home through any prolonged period of imprisonment. My mind and my home are the only two assets that I have left.

In the bankruptcy petition filed on 12/7/00, my husband and I fully and honestly disclosed all the facts, including the defective loan collateral. In the ensuing creditors' meeting in early January, 2001, I admitted to and accepted responsibility for my actions.

In subsequent creditor meetings, a visit with Agent Lavin from the FBI, depositions with banks and the bankruptcy trustee and the matters I faced in Norfolk Superior Court, I have always told the truth. I cooperated with the FBI and turned over many cartons of records relating to Trip Makers upon the FBI's request. I drew a floorplan of Trip Maker's office to assist the FBI and the bankruptcy trustee in identifying where various files were kept.

I do not consider myself to be a threat ever again to society. My intention for the remainder of my life is to be a good citizen, a good employee and an honest person. I never again want to live with the anxiety and moral dilemma of knowing that I did something wrong.

I grew up in a family that stressed hard work, honest behavior and acceptance of responsibility. At an early age, I was using what ever money I could make as a babysitter to help my parents out by paying for my own expenses. I excelled academically and was privileged to receive Equal Opportunity Grants and scholarships that allowed me to attend Boston University without financially burdening my parents.

I always prided myself on my integrity and independence. It was horrifying to me that I found myself involved in criminal activity. I wish I had had the courage to close down Trip Makers, but I did not.

Since the close of Trip Makers, I have worked very hard at three jobs; The Home Depot, Dealership Software and Foxboro Consulting Associates (a home-based business owned by my husband).

I have received Achiever Status on my Performance Reviews with The Home Depot for integrity, teamwork, and the ability to work at any level. This is a physically demanding job, but one that offers me modest health benefits at a reasonable cost.

  At Dealership Software, a company that has developed superior software for the RV, Boat and Used Automotive industries, I have developed new and better ways for this software to perform.

  At Foxboro Consulting Associates, I help my husband out by preparing the more complicated tax returns, understanding the tax law changes that occur almost every year, and doing tax research and handling audits (via mail or visits to the IRS office) for our clients.

  Your Honor, I close this letter by once again expressing my deep remorse and asking that I be given a reasonable chance at trying to rebuild my life. I can assure you that criminal behavior will never again play a part in my life. I regret that I did not have enough clarity to understand that my actions were not going to save my business. I was caught up in a desperate effort to save my business and by so doing; I injured financial institutions that had placed their trust in me.


Respectfully Submitted,

Janet E. Smith

Case 1:05-cr-10155-MLW    Document 44-2    Filed 09/12/2006    Page 3 of 3

**To the Honorable Cheif Judge Mark L.Wolf:**

I am writing this letter because I feel that my silence to the Court, when asked if I wanted to make a personal statement at my sentencing hearing, may have been seen as defiance or disrespect toward the Court and the victims in this matter.

This was not how I felt. When I went to the sentencing hearing, I simply wanted to end the uncertainty and find out what my sentence was going to be. I felt that Attorney Oscar Cruz and Probation Officer Susan Walls already knew how I felt and there was not a lot more that I could say that wasn't already covered by their reports.

My wife and I went "on record" in December of 2000 when we filed the corporate bankruptcy and disclosed all fraudulent acts. During the trustee meeting that day, we knew that we were admitting to bank fraud. My wife and I have lived with this case for so long that we resigned ourselves to the fact that we would go to prison. We have been through so many creditor meetings, depositions, meetings with the F.B.I. and the federal prosecutor and the two years that it took to resolve the Norfolk Superior Court matters without knowing what the federal outcome would be. Over the years, I think I became numbed.

Your Honor, my silence was not intended to signal a lack of remorse or respect. I am sorry for the actions I took. I thought I could pull my company out of failure. As stated in my Sentencing Memorandum, I was stubborn and misguided in that belief. Because of this, I hurt people and businesses and I am sorry for that.

Respectfully,

Thomas H. Cabana